ORIGINAL

FILED
JUN 6 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMY ASSOCIATES,

*Plaintiff*

v.

NO. 06-397 C

THE UNITED STATES,

*Defendant.*

**FIRST AMENDED COMPLAINT**

Plaintiff, Amy Associates, by and through its attorneys, Christopher P. Stroech, Esq. and Arnold, Cesare & Bailey, PLLC, bring the following action against Defendant, the United States of America, acting through the Department of Agriculture, Farmers Home Administration and states as follows:

**Parties**

1. Amy Associates ("Plaintiff"), at all relevant times herein, was a Virginia Partnership and maintained its business address at P.O. Box 506, Berryville, Virginia, 22611. Amy Associates maintains its current business address at 102 East Main Street, Berryville, Virginia, 22611. Mr. Gantt Miller is an authorized agent of Amy Associates.

2. The United States of America ("Defendant"), at all relevant times herein, was acting through the Department of Agriculture, Farmers Home Administration and/or Rural Development Departments (hereinafter "USDA"), at its office in Elkins, West Virginia.

**Jurisdiction and Venue**

3. This Court's jurisdiction is proper pursuant to 28 U.S.C. §1491(a)(1).

4. This action was properly transferred from the United States District Court for the Northern District of West Virginia.

## Factual Allegations

5. On or about December 8, 1977, Plaintiff entered into a Loan Agreement with the Defendant, pursuant to Section 515 of the Housing Act of 1949.

6. Under the terms of this Loan Agreement, Plaintiff agreed to finance rural rental housing and related facilities for senior citizens and other persons and families with low- or moderate-incomes.

7. Washington Village Apartments I, located in Charles Town, West Virginia, in the Northern Judicial District of West Virginia, was purchased with this loan and is subject to the restrictions set forth in the Loan Agreement.

8. Pursuant to the loan documents, the principal amount of $837,600.00 was to be paid over a period of forty (40) years, at an interest rate of eight percent (8%), with principal and interest payments to begin in January, 1979. See Promissory Note, Real Estate Deed of Trust, Short Form Loan Agreement, and Loan Agreement at Exhibits 1, 2, 3 and 4.

9. The loan documents indicated that Plaintiff was unable to obtain a comparable loan elsewhere in the commercial market, and further guaranteed an absolute right to prepay the loan at any time and thereby gain release from the federal program and its related restrictions. Indeed, these incentives induced the Plaintiff to execute the loan documents with the Defendant.

10. Subsequent to this first Loan Agreement, the United States Congress determined that an increasing number of Section 515 participants were prepaying their mortgages which thereby threatened the continued availability of rural low- and moderate-income housing. As such, the

Housing and Community Development Amendments of 1979 prohibited the USDA from accepting prepayment of any loan made before or after the date of enactment, unless the owner agreed to maintain the housing requirements for either a fifteen (15) or twenty (20) year period.

11. On or about March 6, 1980, Plaintiff entered into a second Loan Agreement applicable to Washington Village Apartments I with Defendant, pursuant to Section 515 of the Housing Act of 1949. Under the terms of the loan documents, Plaintiff borrowed a principal amount of $171,000.00 to be paid over a forty (40) year period, at an interest rate of ten percent (10%). The loan documents applicable to this loan included similar terms and housing restrictions as the first loan applicable to Washington Village Apartments I. See Promissory Note, Real Estate Deed of Trust and Loan Agreement at Exhibits 5, 6 and 7.

12. Pursuant to the terms of this second Loan Agreement and the Housing and Community Development Amendments of 1979, Plaintiff agreed to use Washington Village Apartments I for the purpose of housing individuals eligible for occupancy as provided in Title V of the Housing Act of 1949 for a twenty (20) year period beginning March 6, 1980. By its terms, this provision expired on March 6, 2000.

13. In 1987, subsequent to the execution of both Loan Agreements, and in an effort to permanently thwart prepayment attempts, the United States Congress passed the Emergency Low Income Housing Preservation Act (ELIHPA), as amended and set forth in 42 U.S.C. § 1472(c), which placed permanent restraints upon the prepayment of Section 515 loans. ELIHPA directly conflicted with the bargained for provisions of the loan agreement between Plaintiff and Defendant.

14. On or about March 8, 2002, Mr. Gantt Miller, as agent for the Plaintiff, formally requested the right to prepay the entire outstanding amount on the loans applicable to Washington Village Apartments I.

15. The USDA has refused to accept the tendered prepayment and has dishonored its obligation to release control over use of the property that secured the loan.

## COUNT ONE

### (Breach of Contract)

16. Plaintiff incorporates Paragraphs 1 through 15 by reference as if fully set forth herein.

17. Defendant's subsequent legislation constituted an anticipatory repudiation of the contracts between the parties. This repudiation became a breach of the contracts when Plaintiff tendered prepayment and the Defendant dishonored its obligation to accept the tender and release its control over the use of the property securing the loans.

18. As both the direct and proximate result of Defendant's breach, Plaintiff has been damaged and will continue to suffer foreseeable and consequential damages in an amount to be proven at trial.

WHEREFORE, the Plaintiff respectfully demands judgment against the Defendant as follows:

A. That the Court award Plaintiff monetary relief for the damages suffered to date and the damages Plaintiff will continue to suffer as a result of the Defendant's breach of the contracts between the parties, in an amount to be proven at trial;

B. That the Court award Plaintiff its attorney fees and expenses pursuant to applicable law;

C. That the Court award Plaintiff its costs and interest pursuant to applicable law;

D. That the Court grant such other and further relief as the law and the evidence may justify, and as the Court finds necessary and just.

**AMY ASSOCIATES**
**Plaintiff, By Counsel**

Christopher P. Stroech, Esq. (WVSB #9387)
Arnold, Cesare & Bailey, PLLC
P.O. Box 69, 117 E. German Street
Shepherdstown, WV 25443
304.876.1575
304.876.9186
cstroech@acbattorneys.com

EXHIBIT
COMPLAINT
1

Form FmHA 440-16
(Rev. 11-10-75)

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

KIND OF LOAN
Type: RURAL RENTAL HOUSING
Pursuant to:
☐ Consolidated Farm and Rural Development Act.
☒ Title V of the Housing Act of 1949.

# PROMISSORY NOTE

STATE
WEST VIRGINIA
COUNTY
JEFFERSON
CASE NO.
57-19-1329870

Date DECEMBER 8, 19 77.

FOR VALUE RECEIVED, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government") at its office in MARTINSBURG, WEST VIRGINIA 25401,

THE PRINCIPAL SUM OF EIGHT HUNDRED THIRTY-SEVEN THOUSAND SIX HUNDRED AND NO/100——— DOLLARS ($ 837,600.00), plus INTEREST on the UNPAID PRINCIPAL of EIGHT PERCENT ( 8 %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of four alternatives as indicated below: (check one)

☐ I. Principal and Interest payments shall be deferred. The first installment shall be all accrued interest and shall be due on ________, 19__. Payment of Principal and later accrued Interest shall be in ________ installments as indicated in the box below;

☐ II. Principal and Interest payments shall be deferred. The interest accrued to ________, 19__ shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in ________ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of such new Principal herein $________ and the amount of such regular installments in the box below, when such amounts have been determined.

☒ III. Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the 8TH of each DECEMBER beginning on DECEMBER 8, 19 78, through DECEMBER 8, 19 78, Principal and later accrued Interest shall be paid in 468 installments as indicated in the box below;

☐ IV. Payments shall not be deferred. Principal and Interest shall be paid in ________ installments as indicated in the box below:

$ 5847.00 on JANUARY 8, 19 79, and $ 5847.00 thereafter on the 8TH of each MONTH until the PRINCIPAL and INTEREST are fully paid except that the FINAL INSTALLMENT of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and PAYABLE FORTY ( 40 ) YEARS from the DATE of this NOTE. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

Presentment, protest, and notice are hereby waived.

**AMY ASSOCIATES, A Virginia Partnership**

**BY:** s/ Louis B Athey (SEAL)
**LOUIS B. ATHEY, Partner** *(BORROWER)*

s/ Gantt W. Miller III (SEAL)
**GANTT W. MILLER III, Partner** *(SPOUSE)*

**ROBERT B. YOUNG, JR., Partner**
s/ Robert B. Young, Jr

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ | |

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest computed to the effective date of the payment and then to principal.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower. Refunds and extra payments, as defined in the regulations (7 C.F.R. 1861.2) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied to the installments last to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

Borrower agrees that the Government at any time may assign this note and insure the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

Borrower hereby certifies that he is unable to obtain sufficient credit elsewhere to finance his actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower (a) will personally operate such property as a farm with his own and his family's labor if this is an FO loan, or (b) will personally occupy and use such property if this is an RH loan on a "nonfarm tract" or a section 504 RH loan.

REFINANCING AGREEMENT: If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act or Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "KIND OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

EXHIBIT
COMPLAINT
2

5188

*Position 5*

USDA-FmHA
Form FmHA 427-1 WV
(Rev. 6-28-76)

REAL ESTATE DEED OF TRUST FOR WEST VIRGINIA

THIS DEED OF TRUST is made and entered into by and between the undersigned AMY ASSOCIATES, a partnership whose principal place of business if located in ~~xxxxxxx~~ Clarke County, ~~xxxx~~ Virginia, whose post office address is P. O. Box 506, Berryville, ~~xxxx~~ Virginia 22611, as trustor's herein called "Borrower," and James W. Facemire, State Director of the Farmers Home Administration for the State of West Virginia, whose residence address is Fayette County, West Virginia, and his successors in office as State Director or Acting State Director, as trustee, herein called "Trustee," and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, as beneficiary, herein called the "Government," and:

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| December 8, 1977 | $837,600.00 | 8.0% | December 8, 2017 |

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949:

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower:

NOW, THEREFORE, in consideration of the loan(s) Borrower does hereby grant, bargain, sell, convey, and assign unto trustee with general warranty the following described property situated in the State of West Virginia, County(ies) of Jefferson:

SEE ATTACHED SHEET FOR PROPERTY DESCRIPTION

The property described herein was obtained or improved through Federal financial assistance. This property is subject to the provisions of Title VI of the Civil Rights Act of 1964 and the regulations issued pursuant thereto for so long as the property continues to be used for the same or similar purpose for which financial assistance was extended or for so long as the purchaser owns it, whichever is longer.

This instrument also secures the obligations and covenants of Borrower set forth in Borrower's Loan Resolution of December 8, 1977, which is hereby incorporated herein by reference.

together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto Trustee, his successors, grantees and assigns forever and in fee simple:

IN TRUST, NEVERTHELESS, (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement.

BORROWER for himself, his heirs, executors, administrators, successors and assigns WARRANTS the property unto Trustee for the benefit of the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyance specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by him when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government as described in this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of his covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by, delivered to, and retained by the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as beneficiary hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may extend and defer the maturity of and renew and reamortize the debt evidenced by the note or any indebtedness to the Government secured hereby, release from liability to the Government any party so liable thereon, release portions of the property from and subordinate the lien hereof, and waive any other rights hereunder, without affecting the lien or priority hereof or the liability to the Government of Borrower or any other party for payment of the note or indebtedness secured hereby except as specified by the Government in writing.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) The power to appoint a substitute trustee is hereby granted to the Government and its assigns, to be exercised at any time hereafter, without notice and without specifying any reason therefor, by filing for record in the office where this instrument is recorded an instrument of appointment, whereupon the substitute trustee shall succeed to all the estates, rights, powers, and trusts herein granted to or vested in Trustee, and the former trustee or substitute trustee shall be divested thereof; and notice of the exercise of this power and any requirement of, or right to require, a bond from any trustee hereunder, are hereby waived.

(17) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(18) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, a bankrupt, or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, and (d) authorize and request Trustee to foreclose this instrument and sell the property as provided by law.

**(19) "WAIVER: THE BORROWER ACKNOWLEDGES AND AGREES THAT IF HE DEFAULTS A NONJUDICIAL FORECLOSURE SALE OF THE PROPERTY MAY BE CONDUCTED WITHOUT A HEARING OF ANY KIND AND WITHOUT NOTICE BEYOND THE PUBLICATION OF THE NOTICE OF SALE. THE BORROWER HEREBY WAIVES ANY RIGHTS HE MAY HAVE TO ANY SUCH HEARING AND NOTICE. NEVERTHELESS, THE REGULATIONS OF THE FARMERS HOME ADMINISTRATION IN EFFECT AT THE TIME SUCH FORECLOSURE IS STARTED MAY PROVIDE FOR NOTICE AND A MEETING AND THE GOVERNMENT WILL FOLLOW THESE REGULATIONS."**

(20) At the request of the Government, Trustee may foreclose this instrument by advertisement and sale of the property as provided by law, for cash or secured credit at the option of the Government, personal notice of which sale need not be served on Borrower; such sale may be adjourned from time to time without other notice than oral proclamation at the time and place appointed for such sale and correction made on the posted notices; and at such sale the Government and its agents may bid and purchase as a stranger; Trustee at his option may conduct such sale without being personally present, through his delegate authorized by him for such purpose orally or in writing, and Trustee's execution of a conveyance of the property or any part thereof to any purchaser at foreclosure sale shall be conclusive evidence that the sale was conducted by Trustee personally or through his delegate duly authorized in accordance herewith.

(21) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. In case the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(22) All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

(23) Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower and curtesy.

(24) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for him will after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, or national origin.

(25) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future ...tions not inconsistent with the express provisions hereof.

(26) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration, United States Department of Agriculture, at Morgantown, West Virginia 26505, and in the case of Borrower to him at his post office address stated above.

(27) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

WITNESS the hand(s) and seal(s) of Borrower this ____________ day of ____________, 19____.

____________ (Witness) ____________ (SEAL)

____________ (Witness) ____________ (SEAL)

...TE OF WEST VIRGINIA

COUNTY OF ____________ ss: **ACKNOWLEDGMENT**

I, ____________, a Notary Public in and for the County and State aforesaid, do certify that ____________, and ____________, his wife whose name(s) is (are) signed to the writing above, bearing date on the ____________ day of ____________, 19____, has (have) this day acknowledged the same before me in my said County.

Give under my hand this ____________ day of ____________, 19____.

(SEAL)

My commission expires: ____________ ____________ *(Notary Public.)*

The form of this instrument was prepared by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of

____________ *(Name)* ____________ *(Title)*

IN WITNESS WHEREOF Borrower has hereunto set Borrower's hand(s) and seal(s) the day and year first above written.

In the presence of

AMY ASSOCIATES, a Virginia Partnership

By ____________________ WITNESS

By ____________________ LOUIS B. ATHEY, Partner

By ____________________ WITNESS

By ____________________ GANTT W. MILLER, III, Partner

By ____________________ WITNESS

By ____________________ ROBERT B. YOUNG, JR. Partner

ACKNOWLEDGMENT

STATE OF WEST VIRGINIA

ss:

COUNTY OF JEFFERSON

The foregoing instrument was acknowledged before me this 8th day of December, 1977, by Louis B. Athey, Gantt W. Miller III, and Robert B. Young Jr., partners on behalf on behalf of AMY ASSOCIATES, a partnership.

____________________ NOTARY PUBLIC

My commission expires:

November 7, 1983

All that certain tract of land located on the southwest side of South George Street in the Town of Charles Town, Jefferson County, West Virginia, more particularly bounded and described on a plat made by Richard U. Goode, C.L.S., dated July 7, 1977, attached herewith, as follows:

BEGINNING at (7) a point in the line of James Senseney, said point being S. 70° 18' 29" W. 257.20 feet from the west side of South George Street; thence with James Senseney S. 70° 18' 29" W. 325.00 feet to (8) a point in the line of James Senseney; thence with a new division line through the land of Amy Associates N. 19° 18' 06" W. 219.51 feet to (9) a point in the line of Hugh R. McCormick, Jr.; thence with the land of Hugh R. McCormick, Jr. and then with the land of Herbert Martin N. 70° 17' 51" E. 380.00 feet to (10) a point in the line of Herbert Martin; thence with six new division lines throughout the land of Amy Associates S. 19° 42' 01" E. 57.27 feet to (11); thence S. 70° 09' 53" W. 25.20 feet to (12); thence S. 19° 50' 07" E. 92.74 feet to (13); thence S. 06° 22' 20" E. 63.20 feet to (5); thence S. 70° 18' 29" W. 17.00 feet to (6); thence S. 19° 49' 25" W. 8.00 feet to the point of beginning; containing 1.809 acres, more or less, together with a non-exclusive right of way for ingress and egress of all kinds to and from the land herein described and South George Street, being more particularly described as a 60-foot right of way on the plat made by Richard U. Goode, as aforesaid.

AND BEING a portion of the same real estate that was conveyed to Amy Associates, a partnership, by Virginia D. Beebe, et ux., et al, by deed dated the 10th day of June, 1977 and recorded in the Office of the Clerk of the County Commission of Jefferson County, West Virginia, in Deed Book No. 424, Page 588.

THIS CONVEYANCE IS MADE SUBJECT, HOWEVER, to all utility easements of record.

The borrowers do also grant and convey unto said Trustee, a certain 10 foot utility easement for water and sewer, including the right to install and maintain, beginning at the northwest corner of the property herein described and running westwardly along the northern boundary of the residue of the lands owned by the borrowers to the existing sewer line which crosses the residual lands of the borrowers and to the City water lines located at or near Lawrence Street. There is further granted unto said Trustee a drainage easement from the northwest corner of the property herein described towards Mordington Avenue following the natural contours of the borrowers' residual lands.




The above tract of land, located on the Southwest side of South George Street in the Town of Charles Town, Jefferson County, West Virginia, is bounded as follows:

Beginning at (7) a point in the line of James Senseney, said point being S 70 deg. 18 min. 29 sec. W 257.20 feet from the West side of South George Street; thence with James Senseney S 70 deg. 18 min. 29 sec. W 325.00 feet to (8) a point in the line of James Senseney; thence with a new division line through the land of AMY Associates N 19 deg. 18 min. 06 sec. W 219.51 feet to (9) a point in the line of Hugh R. McCormick, Jr.; thence with the land of Hugh R. McCormick, Jr. and then with the land of Herbert Martin N 70 deg. 17 min. 51 sec. E 380.00 feet to (10) a point in the line of Herbert Martin; thence with six new division lines through the land of AMY Associates S 19 deg. 42 min. 01 sec. E 57.27 feet to (11); thence S 70 deg. 09 min. 53 sec. W 25.20 feet to (12); thence S 19 deg. 50 min. 07 sec. E 92.74 feet to (13); thence S 06 deg. 22 min. 20 sec. E 63.20 feet to (5); thence S 70 deg. 18 min. 29 sec. W 17.00 feet to (6); thence S 19 deg. 49 min. 25 sec. W 8.00 feet to the point of beginning, containing 1.809 Acres, more or less.

RICHARD U. GOODE
CERTIFIED LAND SURVEYOR
BERRYVILLE, VIRGINIA.
JULY 7, 1977

RICHARD U. GOODE LICENSED No. 35 STATE OF WEST VIRGINIA SURVEYOR

5188

Amy Associates
To: TRUST
James W. Facemire, Jr.

RECEIVED AND RECORDED
December 8th 1977
TIME 4:30 P.M
BOOK 432 PAGE 11
JOHN [illegible] OTT
CLERK OF [illegible] COMMISSION
OF JEFFERSON COUNTY

EXHIBIT COMPLAINT 3

LOAN AGREEMENT

(SHORT FORM)

Amy Associates, of P. O. Box 506, Berryville, Virginia 22611, a partnership duly organized under the laws of the State of Virginia, hereafter called "debtor", hereby grants to the United States of America acting through the Farmers Home Administration, hereafter called "secured party", a security interest in all furniture, fixtures, furnishings, equipment and machinery in which debtor presently has an interest, used or to be used in connection with the business which is or will be conducted by debtor upon the premises known and described as Washington Village Apartments and which are or will be situated, kept, installed or attached in the premises, as described in the itemized inventory attached hereto as Exhibit "A", and by this reference made a part of this agreement, together with all replacements, repairs, additions and accessions to the property; all other furniture, fixtures, furnishings, machinery and equipment in which debtor may acquire an interest concurrently with or subsequent to this Security Agreement for use in connection with debtor's business even though not specifically enumerated in Exhibit "A", and all present and future contract rights, accounts receivable, gross receipts and general intangibles, now or hereafter acquired; all of the preceeding are hereafter collectively called "collateral". Proceeds of the collateral are also covered, but this shall not be construed to mean that secured party consents to any sale of collateral.

Check one of the following:

_X_ If checked here, the security interest granted hereby shall include all types of collateral described in this agreement and all provisions of this agreement shall be in effect.

___ If checked here, the security interest granted hereby shall not include motor vehicle equipment or fire fighting apparatus and the provisions of this agreement shall be inapplicable insofar as they have application or reference solely to motor vehicle equipment or fire fighting apparatus, but the provisions shall in all other respects be fully effective.

____ If checked here, the security interest granted hereby shall not include accounts receivable, contract rights or general intangibles and the provisions of this agreement shall be inapplicable insofar as they have application or reference solely to accounts receivable, contract rights or general intangibles but the provisions shall in all other respects be fully effective.

Debtor shall pay to secured party when due all sums owed by debtor under its promissory note of even date in the amount of $837,600 and any additional promissory notes, all of which are hereafter collectively called "note," and shall fully and faithfully perform each and every obligation on debtor's part to be performed under the note, this Security Agreement, debtor's loan resolution dated December 8, 1977, and any mortgage or deed of trust given to secured party to secure debtor's obligations under the note, all of which are hereafter collectively called the "loan instruments."

To induce the secured party to make the loan, the debtor warrants and covenants that:

1. The debtor is a partnership which is duly organized and existing under the laws of Virginia; that the execution, delivery and performance of this agreement and the other loan instruments are within the debtor's corporate powers, have been duly authorized, are not in contravention of law or the terms of the debtor's charter, by-laws or other incorporation papers, or of any indenture, agreement or undertaking to which the debtor is a party or by which it is bound; and

2. Except for the security interest created herein, it is the owner of the collateral; that the same is free from any adverse security interest, lien or encumbrance; that it has good right to create the security interest herein; that it will warrant and defend the security interest herein created to the secured party, against all claims and demands of all persons; that until full payment, satisfaction and discharge of all indebtedness secured hereby, it will perform and observe all covenants, agreements and obligations contained or incorporated herein; and

3. It will keep all of the collateral in good condition and free from all encumbrances and will not do, or suffer to be done, any act or thing whereby the security interest created hereby might or could be impaired; and further, it will keep the collateral insured against fire and other risks as may be required by the secured party, in companies, in form and in sums as shall from time to time be satisfactory to and for the benefit of the secured party, and any other party having an interest in the collateral, and will promptly pay all insurance premiums when due; and further, that all insurance shall be first payable in case of loss to the secured party, and if the collateral, covered by insurance, shall be damaged by fire or other hazard, the amounts paid by an insurance company, pursuant to the contract of insurance, shall be the extent of the indebtedness then remaining unpaid, be paid to the secured party and, at the secured party's option, may be applied to the indebtedness or released for the repair or replacement of the collateral; further, it hereby constitutes the secured party, as agent, to cancel, assign or surrender any insurance policy or policies and to collect the return premiums due thereon, in case of the sale or other disposition of the collateral, and to apply the proceeds thereof to the indebtedness hereby secured; and

4. It will not, except with the prior written consent of the secured party, attempt to sell the collateral, or any part thereof, or to remove the same from its premises, and will permit the secured party and its representatives to inspect the same at any reasonable time, it being understood that, so long as it is not in default it may retain possession and at its own expense keep and use the same, subject to all the terms and conditions herein or made a part hereof, or of the loan instrument secured hereby; and

5. It will pay, when due, all taxes, assessments and other charges lawfully levied or assessed upon the collateral, and if such taxes or other assessments remain unpaid after the date fixed for the payment of the same, without penalty or interest or if any lien be claimed which in the opinion of the secured party, or its counsel, would create a valid obligation having priority over the security interest created herein, or if any insurance premiums be at any time overdue, the secured party may pay such taxes, assessments, claims or insurance premiums and the amount paid shall be added to the indebtedness; and

6. None of the collateral is or will be, unless with the assent of the secured party, held subject to security interest, other than that created hereby or lease with the lessee's option to purchase, and that, in case at any time, either before or after the date hereof debtor acquires any equipment under another security interest or lease it will make all payments under that other security interest or lease as and when due and payable; and

7. At all times it will do, execute, acknowledge and deliver, and will cause to be done, executed, acknowledged and delivered, by any corporation or person obligated to the debtor or the secured party, all further acts, deeds and assurances as the secured party shall reasonably require for the better assuring and confirming unto the secured party, the security interest in the collateral, and the rights, privileges and remedies hereby created, granted or assigned, or intended so to be, or which it may hereafter become bound to create, grant or assign to secured party; and

8. It will, upon acquiring any additional equipment, promptly notify the secured party of the acquisition, stating the nature, description cost and amount of equipment so acquired, and it will upon request of the secured party, at debtor's own expense, promptly execute and deliver to the secured party additional agreements or financing statements as required by the secured party; and

9. It will join with the secured party in executing one or more financing statements in form satisfactory to secured party and will pay the cost of filing the same or filing or recording this agreement in all public offices wherever filing or recording is deemed by the secured party to be necessary or desirable; and

10. It will not cause or permit discrimination, in the use of its services or occupancy of its premises because of race, color, creed, sex or national origin; and

11. If the equipment is to be attached to real estate prior to the perfection of the security interest created herein, debtor will on request of secured party furnish the latter with a disclaimer or disclaimers, signed by all persons having an interest in the real estate, or any interest in the equipment which is prior to secured party's security

interest. In such event the debtor warrants that the following is the name of the record owner and description of the real estate: AMY ASSOCIATES

12. When the debtor submits the application to FmHA for the proposed rent increase, the debtor will:

A. Post in a conspicuous place in each structure or building of the project for which the rent increase is sought a Notice to Tenants of Proposed Rent Increase hereinafter referred to as Notice.

B. Give or mail copies of the Notice to all tenants.

C. Advise the tenants that during a 30 day waiting period in which the Notice will be posted, that they have an opportunity to inspect, copy, and make written comments or objections to all materials justifying the proposed rent increase which will be made available to the tenants as noted on the "Notice to Tenants of Proposed Rent Increase."

D. Advise the tenants that all written comments or objections should be submitted directly to the County Supervisor by the end of the 30 day waiting period.

But Upon Default, in the payment of the indebtedness, or upon the breach of any condition, agreement, covenant or other obligation, or the happening of any event creating such a default, contained herein, or in the debtor's application for a loan, or in any instrument or document executed or delivered to the secured party in connection with the indebtedness, including the note secured hereby, the terms of all of which are hereby incorporated herein, secured party may, without limiting, modifying, or otherwise abridging its rights, privileges or remedies;

1. Enter upon the debtor's premises, to take immediate possession of the collateral and there maintain possession thereof, until the completion of the sale, delivery or other disposition thereof, or may remove the equipment therefrom;

2. Require the debtor to assemble the collateral and make it available to the secured party at a place reasonably convenient to both parties hereto;

3. Sell all or any part of the collateral, at private or public sale, to one or more persons, at which the secured party may be a purchaser, by giving notice to the debtor mailed, postage prepaid, to the address of the debtor, appearing in the financing statement related to this agreement, of the date, time, and place of sale, at least five days prior to the date of sale;

4. Insofar as collateral shall consist of accounts receivable, contract rights, insurance policies, instruments, chattel paper, choses in action or the like, the secured party may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose realize upon collateral as the secured party may determine, whether or not liabilities or collateral are then due and for the purpose of realizing the secured party's rights therein, the secured party may receive, open and dispose of mail addressed to the debtor and endorse notes, checks, drafts, money orders, documents of title or other evidence of payment or any form of collateral on behalf of and in the name of the debtor; and

5. Apply the proceeds of the sale, to the extent available, first, to the expenses of retaking, holding, preparing for sale, selling and the like; second, to payment of any prior liens required by law or competent court to be paid; third, to the indebtedness secured hereby; forth, to inferior liens of record required by law or competent court to be paid; fifty, at secured party's option, to any other indebtedness of debtor owing to or insured by the secured party; and the surplus, if any, to the debtor; but in the event there remains an unsatisfied portion of the indebtedness of the debtor to the secured party, the debtor shall remain liable for the deficiency.

No waiver by the secured party of any default shall operate as a waiver of any other default or of the same default on a future occasion. All rights of the secured party hereunder shall inure to the benefit of its successors and assigns, and all obligations of the debtor shall bind its successors and assigns. If there be more than one debtor, their obligations hereunder shall be joint and several. This agreement shall become effective when it is signed by debtor. This agreement shall constitute a security agreement under the Uniform Commercial Code.

The United States Government, the initial secured party, may assign the note at any time. The Government may also insure the payment of the note pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949. This instrument shall secure payment of the note whenever the note is held either by the Government or by an uninsured holder. Whenever the note is held by an insured holder, however, this instrument shall not secure payment of the note or attach to the underlying debt. In that event, this instrument shall constitute an indemnity security agreement to secure any payment to an insured holder of the note or other advances which the Government may be required to make upon default of the debtor. The insured holder shall have no right, title or interest in or to the lien of this instrument or its benefits.

In Witness Whereof, the debtor has caused this agreement to be signed in its name and behalf by the Partners, and witnessed this December 8, 1977.

AMY ASSOCIATES, a Virginia Partnership

Witness *Patricia L. Huyett*

By *[signature]*
LOUIS B. ATHEY, Partner

Witness *Patricia L. Huyett*

By *[signature]*
GANTT W. MILLER, III
Partner

Witness *Patricia L. Huyett*

By *Robert B. Young Jr.*
ROBERT B. YOUNG, JR.,
Partner

EXHIBIT
COMPLAINT
4

(RRH LOAN TO PROFIT TYPE PARTNERSHIP
OPERATING ON A LIMITED PROFIT BASIS)

LOAN AGREEMENT OF December 8, 1977

RESOLUTION OF THE ~~BOARD OF DIRECTORS~~ Partners OF AMY ASSOCIATES PROVIDING FOR BORROWING $837,600. TO FINANCE RENTAL HOUSING AND RELATED FACILITIES IN A RURAL AREA FOR SENIOR CITIZENS AND OTHER PERSONS AND FAMILIES WITH LOW OR MODERATE INCOMES IN RURAL AREAS, THE COLLECTION, HANDLING, AND DISPOSITION OF INCOME, THE ISSUANCE OF INSTALLMENT PROMISSORY NOTE AND REAL ESTATE SECURITY INSTRUMENT, AND RELATED MATTERS

Whereas Amy Associates (herein referred to as the "Partnership") is a partnership duly organized under Laws of the State of ~~West~~ Virginia and operating under The Laws of the State of ~~West~~ Virginia;
(authorizing State statute)

The Partners (herein referred to as the "Partners") have decided to provide certain rental housing and related facilities for eligible occupants in rural areas;

The Partners have determined that the Partnership is unable to provide such housing and facilities with its own resources or to obtain from other sources for such purpose sufficient credit upon terms and conditions which the Partnership could reasonably be expected to fulfill:

BE IT RESOLVED:

1. Application for Loan. The Partnership shall apply for and obtain a loan (herein called "the loan") of $837,600. through the facilities of the United States of America acting through the Farmers Home Administration, United States Department of Agriculture, (herin called "the Government") pursuant to Sections 515(b) and 521(a) of the Housing Act of 1949. The loan may be insured by the Government for the benefit of the lender. The loan shall be used solely for the specific eligible purposes for which it is approved by the Government in order to provide rental housing and related facilities for eligible occupants, as defined by the Government in rural areas. Such housing and facilities and the land constituting the site are herein called "the housing."

2. Execution of Loan Instruments. To evidence the loan the Partnership shall issue a promissory note (herein referred to as "the note"), signed by the Partners, for the amount of the loan, payable in installments over a period of 40 years, bearing interest at a rate, and containing other terms and conditions, prescribed by the Government. To secure the note or any indemnity or other agreement required by the Government, the Partners will execute a real estate security instrument giving a lien upon the housing and upon such other real property of the Partnership as the Government shall require, including an assignment of the rents and profits as collateral security to be enforced in the event of any default by the Partnership, and containing other terms and conditions prescribed by the Government. The Partners will also execute any other security instruments and other instruments and documents required by the Government in connection with the making or insuring of the loan. The indebtedness and other obligations of the Partnership under the note, the related security instrument, and any related agreement are herein called the "loan obligations."

3. Equal Opportunity and Nondiscrimination Provisions. The Partners will execute on behalf of the Partnership (a) any undertakings and agreements required by the Government pursuant to Executive Order 11063 regarding nondiscrimination in the use and occupancy of housing, (b) Farmers Home Administration Form FmHA 400-1, entitled "Equal Opportunity Agreement" including an "Equal Opportunity Clause" to be incorporated in or attached as a rider to each construction contract the amount of which exceeds $10,000 and any part of which is paid for with funds from the loan, and (c) Farmers Home Administration Form FmHA 400-4, entitled "Nondiscrimination Agreement (Under Title VI, Civil Rights Act of 1964)," a copy of which is attached hereto and made a part thereof and any other undertakings and agreements required by the Government pursuant to lawful authority.

4. Supervised Bank Account. The proceeds of the note and the amount of $61,320. to be contributed by the Partnership from its own funds and used for eligible loan purposes shall be deposited in a "supervised bank account" as required by the Government. Amounts in the supervised bank account exceeding $40,000 shall be secured by the depositary bank in advance in accordance with U.S. Treasury Department Circular No. 176. As provided by the terms of the agreement creating the supervised bank account, all funds therein shall, until duly expended, collaterally secure the loan obligations. Withdrawals from the supervised bank account by the Partnership shall be made only on checks signed by the members of the partnership ~~of the Partnership~~ and countersigned by the County Supervisor of the Farmers Home Administration, and only for the specific loan purposes approved in writing by the Government. The Partnership's share of any liquidated damages or other monies paid by defaulting contractors or their sureties shall be deposited in the supervised bank account to assure completion of the project. When all approved items eligible for payment with loan funds are paid in full, any balance remaining in the supervised bank account shall be applied on the note as an "extra payment" as defined in the regulations of the Farmers Home Administration, and the supervised bank account shall be closed.

5. Accounts for Housing Operations and Loan Servicing. The Partnership shall establish on its books the following accounts, which shall be maintained so long as the loan obligations remain unsatisfied: A General Fund Account, an Operation and Maintenance Account, a Debt Service Account, and a Reserve Account. Funds in said accounts shall be deposited in a bank or banks insured by the Federal Deposit Insurance Corporation, except for any portion invested in readily marketable obligations of the United States as authorized by Section 9. Each Partner or other person having the power to draw checks on partnership accounts or otherwise dispose of Partnership assets shall execute a fidelity bond with a surety company approved by the Government, in an amount not less than the estimated maximum amount of such funds to be held in said accounts at any one time. The United States of America shall be named as co-obligee, and the amount of the bond shall not be reduced without the prior written consent of the Government. The Partnership in its discretion may at any time establish and utilize additional accounts to handle any funds not covered by the provisions of this agreement.

6. General Fund Account. By the time the loan is closed the Partnership shall from its own funds deposit in the General Fund Account the amount of $17,978.______. All income and revenue from the housing shall, upon receipt, be immediately deposited in the General Fund Account. The Partnership may also in its discretion at any time deposit therein other funds, not otherwise provided for by this resolution, to be used for any of the purposes authorized in Sections 7, 8, or 9. Funds in the General Fund Account shall be used only as authorized in said Sections and until so used shall be held by the Partnership in trust for the Government as security for the loan obligations.

7. Operation and Maintenance Account. Not later than the 15th of each month, out of the General Fund Account shall be transferred to the Operation and Maintenance Account sufficient amounts to enable the Partnership to pay from the Operation and Maintenance Account the actual, reasonable, and necessary current expenses, for the current month and the ensuing month, of operating and maintaining the housing not otherwise provided for. Current expenses may include, in addition to expenses occurring or becoming due monthly, monthly accumulations of proportionate amounts for the payment of items which may become due either annually or at irregular intervals, such as taxes, insurance and normal repair and replacement of furnishings and equipment reasonably necessary for operation of the housing. Current expenses may also include initial purchase and installation of such furnishings and equipment with any funds deposited in and transferred from the General Fund Account which are not proceeds of the loan or income or revenue from the housing.

8. Debt Service Account. Each month, immediately after the transfer to the Operation and Maintenance Account provided for in Section 6, or after it is determined that no such transfer is called for, any balance remaining in the General Fund Account, or so much thereof as may be necessary, shall be transferred to the Debt Service Account until the amount in the Debt Service Account equals the amount of the next installment due on the loan. Funds in the Debt Service Account shall be used only for payments on the loan obligations and, until so used, shall be held by the Partnership in trust for the Government as security therefor.

9. Reserve Account.

(a) Immediately after each transfer to the Debt Service Account as provided in Section 8, any balance in the General Fund Account shall be transferred to the Reserve Account. Funds in the Reserve Account may be used only as authorized in this resolution and until so used shall be held by the Partnership in trust as security for the loan obligations. Transfers at a rate not less than $74,642. annually shall be made to the Reserve Account until the amount in the Reserve Account reaches the sum of $7464. and shall be resumed at any time when necessary, because of disbursements from the Reserve Account to restore it to said sum. Of such sum, at least 50 percent shall be maintained on a cash basis, referred to herein as the "cash reserve." After the cash reserve reaches the required 50 percent of said sum, all or any portion of the balance of said sum may, at the option of the Partnership, consist of an amount, referred to herein as the "prepayment reserve," by which the Partnership is "ahead of schedule" as defined in the regulations of the Farmers Home Administration. Funds in the cash reserve shall be deposited in a separate bank account or accounts insured by the Federal Deposit Insurance Corporation or invested in readily marketable obligations of the United States, the earnings on which shall accrue to the Reserve Account.

(b) With the prior consent of the Government, funds in the Reserve Account may be used by the Partnership--

(1) To meet payments due on the loan obligations in the event the amount in the Debt Service Account is not sufficient for the purpose.

(2) To pay costs of repairs or replacements to the housing caused by catastrophe or long-range depreciation which are not current expenses under Section 7.

(3) To make improvements or extensions to the housing.

(4) For other purposes desired by the Partnership which in the judgment of the Government likely will promote the loan purposes without jeopardizing collectibility of the loan or impairing the adequacy of the security, or will strengthen the security, or will facilitate, improve, or maintain the orderly collectibility of the loan.

(5) To distribute profits to the Partners or for any other purpose duly authorized by the partnership agreement of up to 8 percent per annum of the borrower's initial investment of $79,298. provided the Partners determine that after such disbursement (a) the amount in the Reserve Account will be not less than that required by Subsection 9(a) to be accumulated by that time and (b) during the next 12 months the amount in the Reserve Account will likely not fall below that required to be accumulated by the end of such period.

(c) Any amount in the Reserve Account which exceeds the aggregate sum specified in Subsection 9(a) and is not agreed between the Partnership and the Government to be used for purposes authorized in Subsection 9(b) shall be applied promptly on the loan obligations.

10. Regulatory Covenants. So long as the loan obligations remain unsatisfied, the Partnership shall—

(a) Impose and collect such fees, assessments, rents, and charges that the income of the housing will be sufficient at all times for operation and maintenance of the housing, payments on the loan obligations, and maintenance of the accounts herein provided for.

(b) If return on investment for any year exceeds 8 percent per annum of borrower's initial investment of $79,298.________, the Government may require that the borrower reduce rents the following year and/or refund the excess return on investment to the tenants or use said excess in a manner that will best benefit the tenants.

(c) Maintain complete books and records relating to the housing's financial affairs, cause such books and records to be audited at the end of each fiscal year, promptly furnish the Government without request a copy of each audit report, and permit the Government to inspect such books and records at all reasonable times.

(d) If required or permitted by the Government, revise the account herein provided for, or establish new accounts, to cover handling and disposition of income from and payment of expenses attributable to the housing or to any other property securing the loan obligations, and submit regular and special reports concerning the housing or financial affairs.

(e) Unless the Government gives prior consent—

(1) Not use the housing for any purpose other than as rental housing and related facilities for eligible occupants.

(2) Not enter into any contract or agreement for improvements or extensions to the housing or other property securing the loan obligations.

(3) Not cause or permit voluntary dissolution of the Partnership nor merge or consolidate with any other organization, nor cause or permit any transfer or encumbrance of title to the housing or any part thereof or interest therein, by sale, mortgage, lease, or otherwise.

(4) Not cause or permit the admission of new partners, to borrow any money, nor incur any liability aside from current expenses as defined in Section 7 which would have a detrimental effect on the housing.

(f) Submit for the housing the following to the Government for prior review not less than 30 days before the effective dates, and for prior approval by the Government:

(1) Annual budgets and operating plans.

(2) Statements of management policy and practice, including eligibility criteria and implementing rules for occupancy of the housing.

(3) Proposed rents and charges and other terms of rental agreements with occupants and compensation to employees of the housing project.

(4) Rates of compensation to partners, officers, and employees of the Partnership payable from or chargeable to any account provided for in this resolution.

(g) If required by the Government, modify and adjust any matters covered by clause (f) of this Section.

(h) Comply with all its agreements and obligations in or under the note, security instrument, and any related agreement executed by the Partnership in connection with the loan.

(i) Not alter, amend, or repeal without the Government's consent the partnership agreement or certificate, which shall constitute parts of the total contract between the Partnership and the Government relating to the loan obligations.

(j) Do other things as may be required by the Government in connection with the operation of the housing, or with any of the Partnership's operations or affairs which may affect the housing, the loan obligation, or the security.

11. Refinancing the Loan. If at any time it appears to the Government that the Partnership is able to obtain a loan upon reasonable terms and conditions to refinance the loan obligations then outstanding, upon request from the Government the Partnership will apply for, take all necessary actions to obtain, and accept such refinancing loan and will use the proceeds for said purpose.

12. General Provisions.

(a) It is understood and agreed by the Partnership that any loan made or insured will be administered subject to the limitations of the authorizing act of Congress and related regulations, and that any rights granted to the Government herein or elsewhere may be exercised by it in its sole discretion to carry out the purposes of the loan, enforce such limitations, and protect the Government's financial interest in the loan and the security.

(b) The provisions of this resolution are representations to the Government to induce the Government to make or insure a loan to the Partnership as aforesaid. If the Partnership should fail to comply with or perform any provision of this agreement or any requirement made by the Government pursuant to this agreement, such failure shall constitute default as fully as default in payment of amounts due on the loan obligations. In the event of such failure, the Government at its option may declare the entire amount of the loan obligations immediately due and payable and, if such entire amount is not paid forthwith, may take possession of and operate the housing and proceed to foreclose its security and enforce all other available remedies.

(c) Any provisions of this agreement may be waived by the Government in its sole discretion, or changed by agreement between the Government and the Partnership, after this agreement becomes contractually binding, to any extent such provisions could legally have been foregone or agreed to in amended form, by the Government initially.

(d) Any notice, consent, approval, waiver, or agreement must be in writing.

(e) This agreement may be cited in the security instrument and any other instruments as the "Loan Agreement of December 8, 1977."
(Date of this resolution)

8

## CERTIFICATE

The undersigned, ____________________________, the Secretary of the Corporation identified in the foregoing Loan Resolution, hereby certifies that the foregoing is a true copy of a resolution duly adopted by the Board of Directors on ____________________, 19_____, which has not been altered, amended, or repealed.

______________________________ ______________________________

Date (Secretary)

The undersigned, Louis B. Athey, Gantt W. Miller, III, and Robert B. Young, Jr., partners of the partnership identified in the foregoing Loan Resolution, hereby certify that the foregoing is a true copy of a resolution duly adopted by the partners on the 8th day of December, 1977, which has not been altered, amended or repealed.

December 8, 1977

______________________________

Robert B. Young Jr.

______________________________

______________________________

EXHIBIT
COMPLAINT
5

Form FmHA 440-16
(Rev. 11-10-75)

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

KIND OF LOAN
Type: RURAL RENTAL HOUSING
Pursuant to:
☐ Consolidated Farm and Rural Development Act.
☒ Title V of the Housing Act of 1949.

# PROMISSORY NOTE

STATE
WEST VIRGINIA
COUNTY
JEFFERSON
CASE NO.
57-19-1,329,870

Date MARCH 6, 19 80.

**FOR VALUE RECEIVED**, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government") at its office in ELKINS, WEST VIRGINIA,

**THE PRINCIPAL SUM OF** ONE HUNDRED SEVENTY-ONE THOUSAND AND 00/100

**DOLLARS** ($ 171,000.00), plus **INTEREST** on the **UNPAID PRINCIPAL** of TEN **PERCENT** ( 10 %) **PER ANNUM.**

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of four alternatives as indicated below: (check one)

☐ I. Principal and Interest payments shall be deferred. The first installment shall be all accrued interest and shall be due on ______, 19__. Payment of Principal and later accrued Interest shall be in ______ installments as indicated in the box below;

☐ II. Principal and Interest payments shall be deferred. The interest accrued to ______, 19__ shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in ______ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of such new Principal herein $______ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ III. Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the ______ of each ______ beginning on ______, 19__, through ______, 19__, Principal and later accrued Interest shall be paid in ______ installments as indicated in the box below;

☒ IV. Payments shall not be deferred. Principal and Interest shall be paid in 480 installments as indicated in the box below:

$ 1,454.00 on APRIL 6, 19 80, and
$ 1,454.00 thereafter on the 6TH of each MONTH until the **PRINCIPAL** and **INTEREST** are fully paid except that the **FINAL INSTALLMENT** of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and **PAYABLE** FORTY ( 40 ) **YEARS** from the **DATE** of this **NOTE**. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

Presentment, protest, and notice are hereby waived.

AMY ASSOCIATES, A Virginia Partnership

BY: _______________ (SEAL)
Louis B. Athey, Partner (BORROWER)

_______________ (SEAL)
Carl W. Miller, III, Partner (SPOUSE)

_______________
Robert B. Young, Jr., Partner

RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ 171,000.00 | 3-6-80 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 171,000.00 | |

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest computed to the due date of the payment and then to principal.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower. Refunds and extra payments, as defined in the regulations (7 C.F.R. 1861.2) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied to the installments last to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

Borrower agrees that the Government at any time may assign this note and insure the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

Borrower hereby certifies that he is unable to obtain sufficient credit elsewhere to finance his actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower (a) will personally operate such property as a farm with his own and his family's labor if this is an FO loan, or (b) will personally occupy and use such property if this is an RH loan on a "nonfarm tract" or a section 504 RH loan.

**REFINANCING AGREEMENT:** If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

**DEFAULT:** Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. **UPON ANY SUCH DEFAULT**, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act or Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "KIND OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

EXHIBIT
COMPLAINT
6

971

MAR 14 1980

REAL ESTATE DEED OF TRUST FOR WEST VIRGINIA

THIS DEED, made this day, March 6, 1980, among Grantor, AMY ASSOCIATES, a general partnership organized and existing under the laws of the State of Virginia, whose address is P. O. Box 506, Berryville, Virginia 22611 (the Borrower), and James Facemire, an officer of the Farmers Home Administration for the State of West Virginia, whose residence address is Marion County, West Virginia and his successors in office as State Director or Acting State Director, as trustee (the Trustee) for the benefit of the United States of America (the Government), acting through the Farmers Home Administration, United States Department of Agriculture, WITNESSETH THAT:

The Government, having an office or place of business at P. O. Box 678, Morgantown, West Virginia, has loaned the Borrower money as evidenced by one or more promissory note(s) or assumption agreement(s)(the Note) (if more than one note is described below, the word "Note" as used herein shall be construed as referring to each note singly or all notes collectively, as the context may require). The Note has been executed by the Borrower, is payable to the order of the Government in installments as specified therein, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by the Borrower, and is further described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date Final Installment |
|---|---|---|---|
| December 8, 1977 | $ 837,600.00 | 8½ % | December 8, 2017 |
| June 21, 1979 | $ 637,000.00 | 8½ % | June 21, 2029 |
| March 6, 1980 | $ 171,000.00 | 10 % | March 6, 2020 |

The Government may assign the Note at any time. The Government may also secure the payment of the Note pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statute administered by the Farmers Home Administration.

This instrument shall secure payment of the Note whenever the Note is held either by the Government or by an uninsured holder. Whenever the Note is held by an insured

holder, however, this instrument shall not secure payment of the Note or attach to the underlying debt. In that event, this instrument shall constitute an indemnity mortgage to secure any payments to an insured holder of the Note or other advances which the Government may be required to make upon default by the Borrower. The insured holder shall have no right, title or interest in or to the lien of this instrument or its benefits. This instrument also secures the Borrower's obligations and covenants under other instruments delivered in connection with the loan evidenced by the Note, including the Borrower's Loan Agreement hereby incorporated by reference. The Note, Loan Agreement, and this instrument together with any supplements, attachments, modifications and additions are collectively referred to as the "Loan Instruments".

NOW THEREFORE, in consideration of the loan(s) the Borrower does hereby grant and convey to the Trustee, his successors, grantees, and assigns, in fee simple forever, the following property in Jefferson County, West Virginia:

PARCEL A:

All that certain tract of land located on the southwest side of South George Street in the Town of Charles Town, Jefferson County, West Virginia, more particularly bounded and described on a plat made by Richard U. Goode, C.L.S., dated July 7, 1977, as follows: BEGINNING at (7) a point in the line of James Senseney, said point being S. 70° 18' 29" W. 257.20 feet from the west side of South George Street; thence with James Senseney S. 70° 18' 29" W. 325.00 feet to (8) a point in the line of James Senseney; thence with a new division line through the land of Amy Associates N. 19° 18' 06" W. 219.51 feet to (9) a point in the line of Hugh R. McCormick, Jr.; thence with the land of Hugh R. McCormick, Jr. and then with the land of Herbert Martin N. 70° 17' 51" E. 380.00 feet to (10) a point in the line of Herbert Martin thence with six new division lines throughout the land of Amy Associates S. 19° 42' 01" E. 57.27 feet to (11); thence S. 70° 09' 53" W. 25.20 feet to (12); thence S. 19° 50' 07" E. 92.74 feet to (13); thence S. 06° 22' 20" E. 63.20 feet to (5); thence S. 70° 18' 29" W. 17.00 feet to (6); thence S. 19° 49' 25" W. 8.00 feet to the point of beginning, containing 1.809 acres, more or less, together with a nonexclusive right-of-way for ingress and egress of all kinds to and from the land herein described and South George Street, being more particularly described as a 60 foot right-of-way on the plat made by Richard U. Goode, as aforesaid.

AND BEING a portion of the same real estate that was conveyed to Amy Associates, a partnership, by Virginia D. Beebe, et ux., et als., by deed dated the 10th day of June, 1977, and recorded in the Office of the Clerk of the County Commission of Jefferson County, West Virginia, in Deed Book 424, Page 588.

The above-described premises are subject, however, to all utility easements of record. Parcel A is also subject to two deeds of trust from the Borrower herein to the Trustee named herein dated December 8, 1977, and June 21, 1979, both trusts being recorded in the Office of the Clerk of the County Commission of Jefferson County, West Virginia, in Deed Book 433, Page 11 and Deed Book 457, Page 41, respectively.

PARCEL B:

The above tract of land, located on the Northeast side of Mordington Avenue in the Town of Charles Town, Jefferson County, West Virginia, is bounded as follows:

BEGINNING at (1) a point on the Northeast side of Mordington Avenue and a corner to James Senseney, thence with the Northeast side of Mordington Avenue N. 44° 16' 58" W. 146.00 feet to (2) a point on the Northeast side of Mordington Avenue; thence with four new division lines through the land of Amy Associates N. 35° 00' 00" E. 45.00 feet to (3); thence N. 09° 23' 37" E. 125.94 feet to (4); thence N. 70° 00' 00" E. 54.00 feet to (5); thence S. 79° 00' 00" E. 55.00 feet to (6) an iron peg a corner to Hugh R. McCormick, Jr.; thence with Hugh R. McCormick, Jr. N. 70° 17' 51" E. 140.50 feet to (7) an iron peg in the line of Hugh R. McCormick, Jr. and a corner to the 1.809 Acre Tract of Amy Associates; thence with the 1.809 Acre Tract of Amy Associates S. 19° 18' 06" E. 219.51 feet to (8) an iron peg in the line of James Senseney; thence with the land of James Senseney for the following courses: S. 70° 18' 29" W. 82.59 feet to (9) an iron peg; thence S. 63° 59' 36" W. 196.09 feet to the point of beginning, containing 1.625 Acres more or less.

AND BEING a portion of the same real estate that was conveyed to Amy Associates, a partnership, by Virginia D. Beebe, et ux., et als., by deed dated the 10th day of June, 1977, and recorded in the Office of the Clerk of the County Commission of Jefferson County, West Virginia, in Deed Book 424, Page 588.

The above-described premises are subject, however, to all utility easements of record. Parcel B is subject to a deed of trust made by the borrower herein to the Trustee named herein dated June 21, 1979, and recorded in the aforesaid Clerk's Office in Deed Book 457, Page 41.

No person occupying the housing shall be required to vacate prior to the close of such 20 year period because of early repayment. The Borrower will be released during such period from these obligations only when the Government determines that there is no longer a need for such housing or that federal or other financial assistance provided to the residents of such housing will no longer be provided. A tenant or person eligible to be a tenant may enforce this provision as well as the Government.

TOGETHER with all the improvements, tenements and appurtenances now or hereafter erected on the property, and all easements, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to or used in connection with the property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, natural gas, water, air and light; and including, but not limited to, all plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, washers, dryers, awnings, screens, blinds, shades, storm windows, storm doors, antennas, attached floor coverings, trees and plants; all of which including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this instrument; and all payments at any time owing to the Borrower by virtue of any sale, lease, transfer, conveyance or condemnation of any part thereof or interest therein--all of which are herein collectively referred to as the "Property".

THIS DEED OF TRUST is also intended as a Financing Statement covering fixtures which are affixed or which may become affixed to the above-described property. The types of collateral covered hereby are described in the preceding paragraph.

The Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, and convey the Property, and that the Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to easements and restrictions of record.

IN TRUST, to secure (a) payment of the Note in accordance with its terms, including any extensions or renewals thereof, whenever the Note is held by either the Government or by an uninsured holder; (b) repayment, with interest, of any payments, advances and expenditures made by the Government pursuant to the terms of this or any other Loan Instrument; and (c) performance of every covenant and agreement of the Borrowers contained in this or any other Loan Instrument.

The Borrower, for itself, its successors and assigns, WARRANTS the Property to the Trustee against the lawful claims of all persons whose claims are not based upon liens, encumbrances, easements or reservations specified above.

The Borrower, for itself, its successors and assigns, COVENANTS AND AGREES as follows:

(1) Borrower will promptly pay any indebtedness secured by this instrument when due.

(2) Borrower will indemnify the Government against any loss which the Government may incur as a result of making payments to an insured holder of the Note after the Borrower's default.

(3) Borrower will pay the Government any fees or other charges required under regulations of the Farmers Home Administration.

(4) Borrower will pay when due all taxes, liens, judgments, encumbrances and assessments lawfully attaching to or assessed against the Property, and, without demand, will also provide the Government with proof of those payments.

(5) Borrower will pay the Government for any expenses necessary or incidental to (a) the protection of the lien or priority of any Loan Instrument and to (b) the enforcement of or compliance with the provisions of any Loan Instrument. "Expenses" includes (without limitation) costs of evidence of title, surveys, recording fees, attorneys' fees and trustees' fees, as well as court costs and expenses of advertising, selling and conveying the Property or any portion of it.

(6) Borrower will use the loan evidenced by the Note solely for the purposes authorized by the Government.

(7) Borrower will keep the Property insured as required by the Government and will deliver the originals of all insurance policies to the Government for safekeeping.

(8) Borrower will comply with all laws, ordinances and regulations affecting the Property and the conduct of Borrower's business operations.

(9) Borrower will maintain the Property in good repair and make any repairs the Government may require.

(10) Borrower will operate the Property in a good and efficient manner and will comply with management plans and practices which the Government may prescribe from time to time.

(11) Borrower will not abandon the Property; effect waste, lessening or impairment of the Property; or cut, remove or lease any timber, gravel, oil, gas, coal or other minerals.

(12) Borrower will not lease (except in the ordinary course of business) assign, sell, transfer or incumber the Property, voluntarily or otherwise, either in whole or in part, without the prior written consent of the Government.

(13) The property described herein was obtained or improved through Federal financing assistance. This property is subject to the provisions of Title VI of the Civil Rights Act of 1964 and the regulations issued pursuant thereto for so long as the property continues to be used for the same or similar purpose for which financial assistance was extended or for so long as the purchaser owns it, whichever is longer.

(14) If at any time it shall appear to the Government that the Borrower may be able to obtain a loan from a production credit association, a federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, the Borrower will, upon the Government's request, apply for and accept a loan in sufficient amount to pay the Note and any other indebtedness secured by this instrument and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such a loan.

(15) The Government may require the Borrower to make additional monthly payments equal to one-twelfth of the estimated taxes, assessments, insurance premiums and other charges upon the Property.

(16) The Government and its agents may inspect the Property at reasonable times to ascertain whether the Borrower is fulfilling its obligation under this or any other Loan Instrument.

(17) The Government may at any time pay as advances for the Borrower's account any amounts which the Borrower is obligated to pay under any Loan Instrument. The Government may exercise this right regardless of whether the Note is insured and regardless of whether advances exceed the face amount of the Note.

(18) All advances by the Government pursuant to the terms of this or any other Loan Instrument shall bear interest at the rate borne by the Note which bears the highest interest rate. Advances, together with interest accruing on them, shall be immediately due and payable by the Borrower at the place designated in the latest Note. Advances by the Government shall neither relieve the Borrower of its obligation to pay nor cure any default under any Loan Instrument.

(19) Except to the extent specified by the Government in writing, the Government in its sole discretion may grant an extension of the time for payment or modification of amortization of the indebtedness secured by any Loan Instrument, release any party from liability to the Government, release portions of the Property from the lien of any Loan Instrument, and waive any other Government right under any Loan Instrument without affecting the lien or priority of any Loan Instrument, or the liability of the Borrower or any other party for payment of the indebtedness secured by any Loan Instrument.

(20) The Government and its assigns are empowered to appoint a substitute trustee at anytime. This power may be exercised without giving any notice or rationale for its use. THE BORROWER WAIVES notice of the exercise of this power and any requirement of, or right to require, a bond from any substitute trustee. The power to appoint a substitute trustee shall be exercised by filing an instrument of appointment in the office where this instrument is recorded, whereupon the substitute trustee shall succeed to all the estates, rights, powers and trusts granted to or vested in the Trustee and the former trustee or Substitute Trustee shall be divested.

(21) All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise.

(22) The Government will not be bound by any present or future state laws (a) providing for valuation, appraisal, homestead or exemption of the Property; (b) prohibiting or restricting an action for deficiency judgment or limiting the judgment amount which may be awarded; (c) prescribing any statute of limitations; (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions the Government may impose by regulation as a condition of approving a transfer of the Property to a new borrower. THE BORROWER WAIVES THE BENEFIT OF ANY SUCH STATE LAWS.

(23) Should the Borrower DEFAULT on any of its obligations under any Loan Instrument, merge, dissolve, be declared bankrupt or insolvent, or make an assignment for the benefit of creditors, without Notice the Government may (a) accelerate the entire indebtedness secured by this instrument by declaring it immediately due and payable; (b) charge the Borrower's account for any reasonable expenses which the Government may pay or incur to maintain and repair the Property; (c) possess, operate and rent the Property; (d) have a receiver appointed for the Property who may exercise the usual powers of receivers in similar cases; and (e) authorize the Trustee to foreclose this and any other Loan Instrument and sell the Property.

(24) At the request of the Government, the Trustee may foreclose this instrument by advertisement and sale of the Property as provided by law, for cash or secured credit as the Government may desire. Personal notice of sale need not be served on the Borrower. The sale may be adjourned from time to time without notice other than oral proclamation at the time and place originally appointed for the sale and written correction made on the posted notices. At the sale the Government and its agents may bid and purchase as a stranger. The Trustee, at his option, may conduct the sale without being personally present. The Trustee may authorize a delegate for that purpose, either orally or in writing. The Trustee's execution of a conveyance of all or part of the Property to any purchaser at foreclosure sale shall be conclusive evidence that the sale was conducted in accordance with the provisions of the Loan Instruments, either by the Trustee personally or through his duly authorized delegates.

(25) Proceeds of a foreclosure sale pursuant to any Loan Instrument shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions of any Loan Instrument; (b) any prior liens required by law or a competent court to be paid; (c) all indebtedness to the Government secured by this instrument; (d) inferior liens of record required by law or a competent court to be paid; (e) at the Government's option, any other indebtedness of the Borrower owing to or insured by the Government, and (f) any balance to Borrower.

(26) If the Government is the successful bidder at a foreclosure sale under any Loan Instrument, any portion of the purchase price not owed to a third party may be paid by crediting that amount on any debts of the Borrower which are owed to or insured by the Government.

(27) The rights and remedies provided in this instrument are cumulative and shall be in addition to every other remedy now or hereafter existing at law, in equity, by statute or by regulation.

(28) A waiver, amendment, release or modification of this instrument may be effected only by a writing which has been duly executed by the Government and shall not be established by conduct, custom or course of dealing.

(29) This instrument shall be governed by federal law, and shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this instrument.

(30) Default under this instrument shall constitute a default under any other security instruments of the Borrower held or insured by the Government and default under any other security instrument constitutes default under this instrument.

(31) The invalidity or unenforceability of any portion of this instrument shall not effect the validity or enforceability of the remaining portion of this instrument.

(32) Notices to the Borrower shall be sent to its address as shown on the first page of this instrument. Notices to the Government shall be addressed to the Farmers Home Administration, United States Department of Agriculture, P. O. Box 678, Morgantown, West Virginia 26505. Notices shall be sent by certified mail (postage prepaid) unless otherwise required by law. The Government and the Borrower may designate any further or different addresses to which subsequent notices shall be sent.

The Borrower and any successors in interest agree to use the housing for the purpose of housing people eligible for occupancy as provided in Section (514 or 515) of Title V of the Housing Act of 1949, and FmHA regulations then extant during this 20 year period beginning March 6, 1980.

The form of this instrument was prepared by the Office of the General Counsel of the United States Department of Agriculture, and the materials in the blank spaces in the form was inserted by or under the direction of

| | |
|---|---|
| James Crawford | Attorney At Law |
| (Name) | (Title) |

IN WITNESS WHEREOF, the Borrower has caused this Deed of Trust to be executed by its General Partner(s) who hereunto set(s) his/their hand(s) and seal(s) as of the date first written above.

Signed, sealed and delivered in the presence of:

AMY ASSOCIATES

______________________ Witness

______________________ Witness

______________________ Witness

By ______________________
Louis B. Athey, Partner

By ______________________
Gantt W. Miller, III, Partner

By ______________________
Robert B. Young, Jr., Partner

ACKNOWLEDGMENT

STATE OF )
) ss:
COUNTY OF )

On this ____ day of ______________, 1980, before me, ______________________, notary public, personally appeared Louis B. Athey, Gantt W. Miller, III, and Robert B. Young, Jr., known to me, who being duly sworn, did say that they are the partners of the Partnership that executed the within instrument, and acknowledged to me that such Partnership executed the same.

(NOTARIAL SEAL)

______________________
NOTARY PUBLIC

My commission expires: ______________________.

STATE OF WEST VIRGINIA

COUNTY OF JEFFERSON, to-wit:

The foregoing instrument was acknowledged before me this 6th day of March, 1980, by Louis B. Athey, Gantt W. Miller III, and Robert B. Young, Jr., partners, on behalf of AMY ASSOCIATES, a partnership.

My commission expires:
November 7, 1983

Patricia Lynn Hewlett
Notary Public

**971**

Amy Associates
To: Trust
James W. Facemire, Trustee

RECEIVED AND RECORDED
March 6th 1980
12:25 P.M.
Fee 4 ~~293~~ 293
JOHN ... OTT
CLERK OF COUNTY COMMISSION
OF JEFFERSON COUNTY

mail to 400 Davis Ave
Facemire Elkins WV. 26241

5.25

EXHIBIT
COMPLAINT
7



# LOAN AGREEMENT

(RRH LOAN TO A PARTNERSHIP OPERATING ON A LIMITED PROFIT BASIS)

1. Parties and Terms Defined. This agreement dated March 6, 1980 of the Amy Associates, a Partnership, duly organized and operating under Laws of the State of Virginia, (Authorizing State statute) herein called "Partnership," whose post office address is P. O. Box 506, Berryville, Virginia, with the United States of America acting through the Farmers Home Administration, United States Department of Agriculture, herein called "the Government," is made in consideration of a loan, herein called "the loan," to Partnership in the amount of $ 171,000. made or insured, or to be made or insured, by the Government pursuant to sections 515 (b) and 521 (a) of the Housing Act of 1949. The loan may be insured by the Government for the benefit of the lender. The loan shall be used solely for the specific eligible purposes for which it is approved by the Government in order to provide rental housing and related facilities for eligible occupants, as defined by the Government in rural areas. Such housing and facilities and the land constituting the site as herein called "the housing." The indebtedness and other obligations of the Partnership under the note evidencing the loan, the related security instrument and related agreement are herein called the "loan obligations."

2. Execution of Loan Instruments. To evidence the loan, the Partnership shall issue a promissory note signed by all partners for the amount of the loan, payable in installments over a period of 40 years bearing interest at a rate, and containing other terms and conditions, prescribed by the Government. To secure the note or any indemnity or other agreement by the Government, all partners are to execute a real estate security instrument giving a lien upon the housing and upon such other real property of the Partnership as the Government shall require, including an assignment of the rents and profits as collateral security to be enforced in the event of any default by the Partnership, and containing other terms and conditions prescribed by the Government. All partners are to execute any other security instruments and other instruments and documents required by the Government in connection with the making or insuring of the loan.

3. Equal Opportunity and Nondiscrimination Provisions. The Partnership will execute (a) any undertakings and agreements required by the Government pursuant to Executive Order 11063 regarding nondiscrimination in the use and occupancy of housing, (b) Farmers Home Administration Form FmHA 400-1 entitled "Equal Opportunity Agreement," including an "Equal Opportunity Clause" to be incorporated in or attached as a rider to each construction contract the amount of which exceeds $10,000 and any part of which is paid for with funds from the loan, and (c) Farmers Home Administration Form FmHA 400-4, entitled "Nondiscrimination Agreement (Under Title VI, Civil Rights Act of 1964)," a copy of which is attached hereto and made a part thereof and any other undertakings and agreements required by the Government pursuant to lawful authority.

4. Supervised Bank Account. The proceeds of the Government loan and the amount of $ 9,000. to be contributed by the Partnership from its own funds and used for eligible loan purposes shall be deposited in a supervised bank account as required by the Government. 1/ Amounts in the supervised bank account exceeding $40,000 shall be secured by the depository bank in advance in accordance with U.S. Treasury Department Circular No. 176. As provided by the terms of the agreement creating the supervised bank account, all funds therein shall, until duly expended, collaterally secure the loan obligations. Withdrawals (or advances) from the supervised bank account by (or for) the Partnership shall be made only on checks (or statements and partial payment estimates) signed by a partner and countersigned by the County Supervisor of the Farmers Home Administration, and only for the specific loan purposes approved in writing by the Government. The Partnership's share of any liquidated damages or other monies paid by defaulting contractors or their sureties shall be deposited in the supervised bank account to assure completion of the project. When all approved items eligible for payment with the Government loan funds are paid in full, any balance remaining in the supervised bank account shall be applied on the note as an "extra payment" as defined in the regulations of the Farmers Home Administration, and the supervised bank account shall be closed.

5. Accounts for Housing Operations and Loan Servicing. The Partnership shall establish on its books the following accounts, which shall be maintained so long as the loan obligations remain unsatisfied: A General Fund Account, an Operation and Maintenance Account, a Debt Service Account, and a Reserve Account. Funds in said accounts shall

be deposited in a bank or banks insured by the Federal Deposit Insurance Corporation, except for any portion invested in readily marketable obligations of the United States as authorized by section 9. One or more of the partners shall execute a fidelity bond with a surety company approved by the Government, in an amount not less than the estimated maximum amount of such funds to be held in said accounts at any one time. The United States of America shall be named as co-obligee, and the amount of the bond shall not be reduced without the prior written consent of the Government. The Partnership in its discretion may at any time establish and utilize additional accounts to handle any funds not covered by the provisions of this agreement.

6. General Fund Account. By the time the Government loan is closed or interim funds are obtained to preclude the necessity for multiple advances of loan funds, whichever occurs first, the Partnership shall from its own funds deposit in the General Fund Account the amount of $ 3,600. All income and revenue from the housing shall, upon receipt, be immediately deposited in the General Fund Account. The Partnership may also in its discretion at any time deposit therein other funds, not otherwise provided for by this agreement, to be used for any of the purposes authorized in sections 7, 8, or 9. Funds in the General Fund Account shall be used only as authorized in said sections and until so used shall be held by the Partnership in trust for the Government as security for the loan obligations.

7. Operation and Maintenance Account. Not later than the 15th of each month, out of the General Fund Account shall be transferred to the Operation and Maintenance Account sufficient amounts to enable the Partnership to pay from the Operation and Maintenance Account the actual, reasonable, and necessary current expenses, for the current month and the ensuing month, of operating and maintaining the housing not otherwise provided for. Current expenses may include, in addition to expenses occurring or becoming due monthly, monthly accumulations of proportionate amounts for the payment of items which may become due either annually or at irregualr intervals, such as taxes, insurance and normal repair and replacement of furnishings and equipment reasonably necessary for operation of the housing. Current expenses may also include initial purchase and installation of such furnishings and equipment with any funds deposited in and transferred from the General Fund Account which are not proceeds of the loan or income or revenue from the housing.

8 Debt Service Account. Each month, immediately after the transfer to the Operation and Maintenance Account provided for in section 7, or after it is determined that no such transfer is called for any balance remaining in the General Fund Account or so much thereof as may be necessary, shall be transferred to the Debt Service Account until the amount in the Debt Service Account equals the amount of the next installment due on the loan. Funds in the Debt Service Account shall be used only for payments on the loan obligations and until so used, shall be held by the Partnership in trust for the Government as security therefor.

9. Reserve Account.

(a) Immediately after each transfer to the Debt Service Account as provided in section 8 any balance in the General Fund Account shall be transferred to the Reserve Account. Funds in the Reserve Account may be used only as authorized in this agreement and until so used shall be held by the Partnership in trust as security for the loan obligations. Transfers at a rate not less than $ 1,800. 2/ annually shall be made to the Reserve Account until the amount in the Reserve Account reaches the sum of $ 18,000. 3/ and shall be resumed at any time when necessary, because of disbursements from the Reserve Account to restore it to said sum. Of such sum, at least 50 percent shall be maintained on a cash basis, referred to herein as the "cash reserve". After the cash reserve reaches the required 50 percent of said sum, all or any portion of the balance of said sum may, at the option of the Partnership consist of an amount. referred to herein as the "prepayment reserve", by which the Partnership is "ahead of schedule" as defined in the regulations of the Farmers Home Administration. Funds in the cash reserve shall be deposited in a separate bank account or accounts insured by the Federal Deposit Insurance Corporation or invested in readily marketable obligations of the United States, the earnings on which shall accrue to the Reserve Account.

(b) With the prior consent of the Government, funds in the Reserve Account may be used by the Partnership--

(1) To meet payments due on the loan obligations in the event the amount in the Debt Service Account is not sufficient for the purpose.

(2) To pay costs of repairs or replacements to the housing caused by catastrophe or long-range depreciation which are not current expenses under section 7.

(3) To make improvements or extensions to the housing.

(4) For other purposes desired by the Partnership which in the judgment of the Government likely will promote the loan purposes without jeopardizing collectibility of the loan or impairing the adequacy of the security, or will strengthen the security, or will facilitate, improve, or maintain the orderly collectibility of the loan.

(5) To pay dividends to the partners of up to 8% per annum of the borrowers initial investment of $ 12,600. 4/ provided the Partnership determines that after such disbursement (a) the amount in the Reserve Account will be not less than that required by subsection 9 (a) to be accumulated by that time, and (b) during the next 12 months the amount in the Reserve Account will likely not fall below that required to be accumulated by the end of such period.

(c) Any amount in the Reserve Account which exceeds the aggregate sum specified in subsection 9 (a) and is not agreed between the Partnership and the Government to be used for purposes authorized in subsection 9 (b) shall be applied promptly on the loan obligations.

10. Regulatory Covenants. So long as the loan obligations remain unsatisfied, the Partnership shall--

(a) Impose and collect such fees, assessments, rents, and charges that the income of the housing will be sufficient at all times for operation and maintenance of the housing, payments on the loan obligations, and maintenance of the accounts herein provided for.

(b) If return on investment for any year exceeds 8 percent per annum of borrower's initial investment of $ 12,600. 4/, the Government may require that the borrower reduce rents the following year and/or refund the excess return on investment to the tenants or use said excess in a manner that will best benefit the tenants.

(c) Maintain complete books and records relating to the housing's financial affairs, cause such books and records to be audited at the end of each fiscal year, promptly furnish the Government without request a copy of each audit report, and permit the Government to inspect such books and records at all reasonable times.

(d) If required or permitted by the Government, revise the account herein provided for, or establish new accounts, to cover the handling and disposition of income from and payment of expenses attributable to the housing or to any other property securing the loan obligations, and submit regular and special reports concerning the housing or financial affairs.

(e) Agree that if any provisions of its organizational documents or any verbal understandings in any conflict with the terms of this loan agreement, the terms of the loan agreement shall prevail and govern.

(f) Unless the Government gives prior consent--

(1) Not use the housing for any purpose other than as rental housing and related facilities for eligible occupants.

(2) Not enter into any contract or agreement for improvements or extensions to the housing or other property securing the loan obligations.

(3) Not change the membership by either the admission or withdrawal of partners nor cause or permit voluntary dissolution of the Partnership nor cause or permit any transfer or encumbrance of title to the housing or any part thereof or interest therein, by sale, mortgage, lease, or otherwise.

(4) Not borrow any money, nor incur any liability aside from current expenses as defined in section 7 which would have a detrimental effect on the housing.

(g) Submit for the housing the following to the Government for prior review not less than ______30______ days before the effective dates, and for prior approval by the Government.

(1) Annual budgets and operating plans.

(2) Statements of management policy and practice, including eligibility criteria and implementing rules for occupancy of the housing.

(3) Proposed rents and charges and other terms of rental agreements with occupants and compensation to employees of the housing project.

(4) Rates of compensation to officers and employees of the Partnership payable from or chargeable to any account provided for in this agreement.

(h) If required by the Government, modify and adjust any matters covered by clause (g) of this section.

(i) Comply with all its agreements and obligations in or under the note, security instrument, and any related agreement executed by the Partnership in connection with the loan.

(j) Not alter amend, or repeal without the Government's consent this agreement or the Partnership Agreement, which shall constitute parts of the total contract between the Partnership and the Government relating to the loan obligation.

(k) Do other things as may be required by the Government in connection with the operation of the housing, or with any of the Partnership's operations or affairs which may affect the housing, the loan obligation, or the security.

11. Refinancing the Loan. If at any time it appears to the Government that the Partnership is able to obtain a loan upon reasonable terms and conditions to refinance the loan obligations then outstanding, upon request from the Government the Partnership will apply for, take all necessary actions to obtain, and accept such refinancing loan and will use the proceeds for said purpose.

12. General Provisions. (a) It is understood and agreed by the Partnership that any loan made or insured will be administered subject to the limitations of the authorizing act of Congress and related regulations, and that any rights granted to the Government herein or elsewhere may be exercised by it in its sole discretion to carry out the purposes of the loan, enforce such limitations, and protect the Government's financial interest in the loan and the security.

(b) The provisions of this agreement are representations to the Government to induce the Government to make or insure a loan to the Partnership as aforesaid. If the Partnership should fail to comply with or perform any provision of the agreement or any requirement made by the Government pursuant to this agreement, such failure shall constitute default as fully as default in payment of amounts due on the loan

obligations. In the event of such failure, the Government at its option may declare the entire amount of the loan obligations immediately due and payable and, if such entire amount is not paid forthwith, may take possession of and operate the housing and proceed to foreclose its security and enforce all other available remedies.

(c) Any provisions of this agreement may be waived by the Government, in its sole discretion, or changed by agreement between the Government and the Partnership, after this agreement becomes contractually binding, to any extent such provisions could legally have been foregone or agreed to in amended form, by the Government initially.

(d) Any notice, consent, approval, waiver, or agreement must be in writing.

(e) This agreement may be cited in the security instrument and any other instruments as the "Loan Agreement of March 6 (date of this agreement), 19 80 ."

AMY ASSOCIATES
PARTNERSHIP NAME

By:

Louis B. Athey

Gantt W. Miller, III

Robert B. Young, Jr.

1/ Only loan funds and borrower's funds to be used for an eligible loan purpose, may be deposited in the supervised bank account.

2/ In most cases this figure should be one-tenth of the aggregate sum specified later in the sentence and indicated by footnote 3.

3/ The amount to be inserted will usually be about 10 percent of the value of the buildings and related facilities financed wholly or partially with the loan.

4/ The amount to be inserted shall be determined in accordance with paragraph VIII K of FmHA Instruction 444.5.

o O o